**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| TOMMIE ADAMS FOR THE USE AND BENEFIT OF THE HEIRS AT LAW OF AUTUMN CLARK DECEASED, AND TOMMIE ADAMS, | ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) NO. 3:06-cv-00788 |
| | ) JUDGE HAYNES |
| THE CITY OF HENDERSONVILLE, HENDERSONVILLE POLICE DEPT., OFFICER JAMES GARRETT, OFFICER RUSSELL LARA, AND JEREMY CLARK, | ) ) ) ) ) |
| Defendants. | ) |

## M E M O R A N D U M

Plaintiff Tommie Adams filed this action individually and on behalf of the heirs of

Autumn Clark, her deceased child, under 42 U.S.C. § 1983 against Defendants: City of

Hendersonville, Hendersonville Police Department, James Garrett, Russell Lara, and Jeremy

Clark.  Plaintiff's claims arise out of Garrett's and Lara's response to Plaintiff's call for police

assistance in a domestic dispute with Jeremy Clark, her husband.[1]  In essence, Plaintiff asserts

claims for violation of her Fourth and Fourteenth Amendment rights due to the individual

Defendants' unlawful seizure of her during the officers' response to Plaintiff's call and that this

seizure ultimately led to the death of her child, Autumn Clark.  Plaintiff also asserts claims

against the City of Hendersonville and the Hendersonville Police Department for the alleged

---

[1]Plaintiff Tommie Adams and Defendant Jeremy Clark were married at the time of these events, but have since divorced.  Plaintiff has since legally changed her name from Tommie Clark to Tommie Adams.

Case 3:06-cv-00788   Document 36   Filed 09/18/08   Page 1 of 30 PageID #: 585

Fourth and Fourteenth Amendment violations due to their customs, practices, and policies, which Plaintiff contends led directly to the violations at issue.[2]  The parties proceeded with discovery.

Before the Court are Plaintiff's motion for summary judgment (Docket Entry No. 21) and the motion for summary judgment submitted by Defendants City of Hendersonville, Hendersonville Police Department, James Garrett, and Russell Lara. (Docket Entry No. 24).

In her motion, Plaintiff contends that Defendants violated her Fourth Amendment rights by an unreasonable seizure when the Defendants improperly threatened to arrest Plaintiff without probable cause if she attempted to remove her daughter Autumn from Defendant Clark's car. Plaintiff also asserts that the Defendants violated her Fourteenth Amendment due process rights, in that Defendants' refusal to allow Plaintiff to remove Autumn from Defendant Clark's car constituted a "State Created Danger."  Plaintiff further argues that the uncontroverted material facts support an award of summary judgment.

In their response and motion for summary judgment, Defendants argue that Plaintiff's proof is insufficient to support a judgment on any § 1983 claims.  Specifically, Defendants assert: 1) Plaintiff's proof does not support a "seizure" under the Fourth Amendment; 2) the Defendants did not cause the danger to Autumn Clark as Autumn's death was caused by Sudden Infant Death Syndrome and her death was not foreseeable by the Defendants; and 3) Plaintiff has not identified any practice, policy or custom of the City of Hendersonville that caused the alleged violation of Plaintiff's constitutional rights.  Finally, Defendants argue they are entitled to

---

[2]Plaintiff has also asserted a claim against Jeremy Clark for wrongful death, but that claim is not the subject of the competing summary judgment motions.  For the purposes of this Memorandum, the term "Defendants" shall refer only to the City of Hendersonville, Hendersonville Police Department, James Garret, and Russell Lara.

qualified immunity on Plaintiff's § 1983 claims.

In response to Defendants' motion for summary judgment, Plaintiff argues that it was the individual Defendants' threat of arrest alone that caused the violation of Plaintiff's constitutional rights. Plaintiff further argues that qualified immunity does not shield Defendants from liability, and that the City of Hendersonville's policies and later ratification of the individual Defendants' actions create an issue of material fact to preclude summary judgment.

For the reasons set forth below, the Court concludes that Plaintiff's motion for summary judgment should be denied. The Court further concludes that Defendants' motion for summary judgment should be granted in part and denied in part. Plaintiff has failed to present facts to support a judgment against the City of Hendersonville for any claim. Plaintiff has also failed to present facts to support a judgment against any individual Defendant on her Fourteenth Amendment claim. A material factual disputes exists, however, as to the Plaintiff's Fourth Amendment claim of an unreasonable seizure by the Defendants Garrett and Lara.

## I. Review of the Record[3]

On August 6, 2005, Tommie Adams called the Hendersonville Police Department

---

[3]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that except for the Defendants City of Hendersonville and Hendersonville Police Department, there are material factual disputes. Thus, this section does not constitute a findings of fact under Fed. R. Civ. P. 56(d) on Plaintiff's Fourth Amendment claim against the Defendants Garrett and Lara.

alleging that her husband, Jeremy Clark, had been drinking and was attempting to leave with her eight month old child, Autumn Clark. (Docket Entry No. 30 at ¶ 3). Tommie Adams and Jeremy Clark had been arguing over various domestic issues, at which time Jeremy Clark decided to take his children Byron and Autumn and leave the house.[4] (Docket Entry No. 32 at ¶ 14-15). As Jeremy Clark was attempting to leave, the individual Defendants pulled up behind him, preventing him from leaving with the children. (Docket Entry No. 30 at ¶ 10).

Upon arriving at the scene, the individual Defendants separated Tommie Adams and Jeremy Clark, and administered two field sobriety tests to Mr. Clark, which he passed. (Docket Entry No. 32 at ¶¶ 23, 26; Docket Entry No. 30 at ¶ 14). Plaintiff told the individual Defendants that she was having a dispute with Jeremy Clark regarding the children, and that Jeremy Clark "didn't take care of the children,...was not a good father,...[and] never got up with the baby and stuff like that." (Docket Entry No. 30 at ¶ 13). The individual Defendants also learned from Plaintiff that there was not any current order of protection or custody order in regard to Mr. Clark or the children. (Docket Entry No. 32 at ¶ 29). At this point, the individual Defendants decided that Jeremy Clark could leave with Autumn Clark, as they deemed the situation "de-escalated." (Docket Entry No. 30 at ¶ 15; Docket Entry No. 32 at ¶ 24).

The parties dispute the subsequent events. Defendants contend that Plaintiff asked a series of hypothetical questions regarding what would happen if she attempted to remove Autumn from Mr. Clark's vehicle. (Docket Entry No. 32 at ¶ 33). The individual Defendants state that they told Plaintiff that she would "probably" be arrested as the primary aggressor who escalated the situation. (Garrett Deposition pp. 16-17). They further submit that if Plaintiff had

---

[4]Byron Clark is Jeremy Clark's son from a prior relationship.

-4-

attempted to remove Autumn, it would have provoked "some type of altercation" and "escalated it from a deescalated situation." (Garrett Deposition pp. 17-18). The individual Defendants also stated that if Plaintiff had attempted to remove Autumn, it would have caused a domestic assault against Jeremy Clark or Autumn Clark. (Garrett Deposition p. 22; Lara Deposition p. 14). Defendants further argue that Plaintiff was "visibly upset" and that her actions would have made her the primary aggressor in that situation. (Docket Entry No. 30 at ¶ 31).

In contrast, Plaintiff contends that she was affirmatively threatened with arrest by the individual Defendants when Plaintiff asked if she could remove Autumn from the car. (Docket Entry No. 32 at ¶ 33). Plaintiff particularly takes issue with any characterization of the threat to arrest as "hypothetical," and contends that she was prohibited by the individual Defendants from attempting to remove Autumn Clark in any way. (Docket Entry No. 32 at ¶ 36). Plaintiff also contends that Jeremy Clark would not have prevented Plaintiff from removing Autumn from the car once the individual Defendants arrived on the scene. (Docket Entry No. 32 at ¶ 29).

The subsequent material events are largely undisputed. Jeremy Clark was allowed to leave with Autumn still in his car. (Docket Entry No. 32 at ¶ 38). He then drove to visit relatives in Macon County, Tennessee, where he called Plaintiff to inform her that they had arrived safely. (Docket Entry No. 32 at ¶¶ 39, 43). After Autumn ate some baby food, Jeremy Clark spent time with Autumn and his relatives in the living room. (Docket Entry No. 32 at ¶¶ 40, 44). At that time, Jeremy Clark did not partake of any alcoholic beverages, drugs, or other medications at his relatives' house in Macon County. (Docket Entry No. 32 at ¶¶ 41-42). Jeremy Clark, Byron Clark, and Autumn Clark went to bed around 10:45 or 11:00 P.M. that evening, and all three slept together on a mattress on the floor. (Docket Entry No. 32 at ¶¶ 39, 43). When Jeremy

-5-

Clark awoke, a pillow was covering Autumn's face and she was dead. (Docket Entry No. 32 at ¶¶ 53, 61). While the parties dispute whether Jeremy Clark acted intentionally, knowingly, recklessly, or negligently in allowing the pillow to cover Autumn's face, this dispute is immaterial to decide these motions for summary judgment.

Finally, Defendants offer the expert testimony of Dennis Mays, a police Commander for the City of Jackson, Tennessee. After reviewing the events at issue, Mays concluded that the individual Defendants acted reasonably in responding to the domestic dispute, and that the individual Defendants did not violate anyone's constitutional rights. (Docket Entry No. 27-3 p. 5). Mr. May's report also states that if Plaintiff had attempted to remove Autumn from Jeremy Clark's car, such an act "could have made [Plaintiff] the primary aggressor,...and the officers could have to arrest her pursuant to state law." (Docket Entry No. 27-3 p. 5).

## II. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

-6-

judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which

-7-

it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment

-8-

must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>

* * *

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

-9-

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

     1.    Complex cases are not necessarily inappropriate for summary judgment.

-10-

2.     Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.     The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.     This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.     A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.     As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.     The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.     The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.     The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed

-11-

upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### A. Fourth Amendment

Defendants raise qualified immunity as a defense (Docket Entry No. 25 p. 11), but the Court must first determine whether a constitutional violation has been properly alleged before reaching the issue of qualified immunity. In Siegert v. Gilley, 500 U.S. 226, 231 (1991), the Supreme Court addressed the proper analytical framework for determining qualified immunity and the first step is to decide if a federal right is presented.

> We have on several occasions addressed the proper analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity asserted in a motion for summary judgment. Qualified immunity is a defense that must be pleaded by a defendant official. Gomez v. Toledo, 446 U.S. 635 (1980); Harlow, 457 U.S. at 815. Once a defendant pleads a defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . Until this threshold immunity question is resolved, discovery should not be allowed." Id. at 818.

> * * *

> In Harlow we said that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." Harlow, supra, at 818 (emphasis added). A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to

-12-

weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.  One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.  In Mitchell v. Forsyth, supra, we said:

> Harlow thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.  The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

Id. at 231-32.  Thus, the Court must first examine Plaintiff's allegations of constitutional violations.

Plaintiff alleges that Defendants violated her Fourth Amendment rights by threatening her with arrest, which constituted an unlawful seizure under the Fourth Amendment.  (Docket Entry 22 p. 4).  Plaintiff also claims that the City of Hendersonville is liable for its custom, practice or policy that led to the violation of her Fourth Amendment rights.  (Docket Entry 22 p. 17-19).  Defendants argue that their actions did not constitute a "threat" of an arrest, and that the individual Defendants advised Plaintiff she would "probably" be arrested if she attempted to remove Autumn from Jeremy Clark's car, but that the individual Defendants were only dealing with "hypothetical answers."  (Docket Entry No. 30 at ¶ 17).  Defendants also contend that the City of Hendersonville cannot be held liable for the individual Defendants' alleged violation of Plaintiff's Fourth Amendment rights.  The Court examines each group of Defendants in turn.

**1. Individual Defendants**

The Fourth Amendment to the United States Constitution prohibits unreasonable

-13-

seizures. Courts have interpreted this clause to extend beyond simple arrests, and the Fourth

Amendment applies when a police officer restrains the liberty of a citizen in some way. Terry v.

Ohio, 392 U.S. 1, 19 (1968). The relevant threshold question is whether the citizen was actually

seized in the police encounter. United States v. Richardson, 949 F.2d 851, 855 (1991). "An

individual is deemed seized if 'in view of all of the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave.'" Id. (quoting United States

v. Knox, 839 F.2d 285, 289 (6th Cir. 1988); see also Florida v. Royer, 460 U.S. 491, 502 (1983)

(White, J., concurring). In United States v. Grant, 920 F.2d 376, 382 (6th Cir. 1990), the Sixth

Circuit noted that "a Fourth Amendment seizure occurred because the agents exercised their

authority in a manner which made it apparent...that [the individual] was 'not free to ignore the

officer[s] and proceed on his way.'" (quoting United States v. Black, 675 F.2d 129, 135 (7th Cir.

1982)).

      "A seizure of a person occurs '[o]nly when the officer, by means of physical force or

show of authority, has in some way restrained the liberty of a citizen....'" Richardson, 949 F.2d at

855 (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)). The Supreme Court has also stated that

"the test for existence of a 'show of authority' is an objective one: not whether the citizen

perceived that he was being ordered to restrict his movement, but whether the officer's words

and actions would have conveyed that to a reasonable person." California v. Hodari, D., 499

U.S. 621, 628 (1991). "Factors that may lead a reasonable person to conclude that she is not free

to leave include 'the threatening presence of several officers, the display of a weapon by an

officer, some physical touching of the person of the citizen, or the use of language or tone of

voice indicating that *compliance with the officer's request might be compelled.*'" Richardson,

-14-

949 F.2d at 856 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)) (emphasis added).

A Fourth Amendment seizure "does not occur whenever there is a governmentally caused termination of an individual's freedom of movement...[or] whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in original). Further, "[i]t is only when an officer restrains an individual's liberty 'by means of physical force or show of authority' that Fourth Amendment protections attach." Bennett v. City of Eastpointe, 410 F.3d 810, 821 (6th Cir. 2005) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)).

Bennett (which was decided prior to the events here) is particularly appropriate here. In Bennett, the Sixth Circuit denied summary judgment where an African-American bicyclist alleged that he was ordered to cross from one city back into another by a police officer acting under color of authority. 410 F.3d at 834. The Sixth Circuit held that: "Fourth Amendment jurisprudence suggests a person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to remain somewhere, by virtue of some official action." Id. (citing Florida v. Bostick, 501 U.S. 429, 439 (1991). Bostick reiterated that "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" 501 U.S. at 437 (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988).

-15-

The Court concludes that when the evidence is viewed in the light most favorable to the Plaintiff, as required here, the individual Defendants' threat of arrest constituted a seizure of Plaintiff.[5] As the Defendants note, both Plaintiff and Jeremy Clark "had a legal right to Autumn." (Docket Entry No. 25 p. 9). As Plaintiff had a legal right to Autumn (and thus a right to pick her up from the unlocked backseat of Jeremy Clark's car), the individual Defendants' threat to arrest Plaintiff prevented her from going about her business, and restricted her liberty. According to the evidence offered by Plaintiff, the individual Defendants did not want Plaintiff to remove Autumn from the car, and used the threat of arrest to effectuate this desire. Thus, if Plaintiff's allegations are accepted by the fact finder, under Bennett, a seizure clearly occurred.

Of course, a finding of a seizure does not end the inquiry. Only seizures that are unreasonable constitute violations of the Fourth Amendment. A "seizure" itself is not enough to establish § 1983 liability. It must also be unreasonable. Brower, 489 U.S. at 599. The individual Defendants contend that they are entitled to qualified immunity because they acted reasonably and Plaintiff would have been the primary physical aggressor under the state domestic assault statute, thus making their hypothetical threat to arrest appropriate. Although Defendants bear the burden of pleading the defense, Plaintiff must show that Defendants are not entitled to qualified immunity. Blake v. Wright, 179 F.3d 1003, 1007 (6th Cir. 1999).

Government officials, sued in their individual capacity, performing discretionary functions, may be afforded qualified immunity, shielding them from liability arising from a §

---

[5]Whether the individual Defendants affirmatively threatened Plaintiff with arrest is a question for the fact-finder in this case. As Plaintiff has stated (and offered evidence) that she was threatened with arrest if she attempted to remove Autumn, Plaintiff has met her burden for surviving summary judgment. But because Defendants dispute whether there was an actual threat, summary judgment is inappropriate for Plaintiff as well.

-16-

1983 action. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Discretionary functions involve "significant decision-making that entails personal deliberation, decision and judgment." Davis v. Holly, 835 F.2d 1175, 1178 (6th Cir. 1987). Police officers perform discretionary functions. Aquino v. Honda of America, Inc., 158 Fed.Appx. 667, at *4 (6th Cir. 2005).

When a defendant raises the qualified immunity defense, a plaintiff must satisfy two prongs.[6] First, the plaintiff must show that the right was clearly established at the time of the violation. Mitchell v. Forsyth, 472 U.S. 511 (1985); Harlow, 457 U.S. at 818. Second, the plaintiff must also show that "the contours of [the clearly established] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Pray v. City of Sandusky, 49 F.3d 1154, 1157 (6th Cir 1995) (quoting Anderson).

As noted earlier, for these claims there is a threshold legal inquiry of qualified immunity for the Court. In Hunter v. Bryant, 502 U.S. 224 (1991), the Court awarded qualified immunity to officers who made an arrest based upon a rambling letter about a plot to kill the president. The criminal charges were later dismissed. The district court denied immunity to the arresting agents and the Court of Appeals held that the agents' reading of the letter "was not the most reasonable." 502 U.S. at 227. The Supreme Court reversed.

> Our cases establish that qualified immunity shields agents Hunter and Jordan from suit for damages if "a reasonable officer could have believed [Bryant's arrest] to be lawful in light of clearly established law and the information the [arresting] officers possessed." Even law enforcement officials who "reasonably

---

[6]Although the plaintiff bears the burden of proof when the defendant raises a qualified immunity defense, the defendant, moving for summary judgment, must still show that no genuine issues of material fact remain that would defeat a claim of qualified immunity. Adams v. Metiva, 31 F.3d 375, 386 (6th Cir. 1994).

but mistakenly conclude that probable cause is present" are entitled to immunity. Moreover, because "[t]he entitlement is an immunity from suit rather than a mere defense to liability," we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

The decision of the Ninth Circuit ignores the import of these decisions. The Court of Appeals' confusion is evident from its statement that "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment . . . based on lack of probable cause is proper only if there only one reasonable conclusion a jury could reach." This statement of law is wrong for two reasons. First, it routinely places the question of immunity in the hands of the jury. Immunity ordinarily should be decided by the court long before trial. Second, the court should ask whether the agents acted reasonably under the settled law in the circumstances, not whether another, reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.

Id. at 536-37 (emphasis added) (citations omitted). Accord Greene v. Reeves, 80 F.3d 1101, 1104 (6th Cir. 1996).

Precedent is not required for all Fourth Amendment claims in order to conclude that the right is clearly established. In a word, immunity from damages does not attach simply because the particular legal requirement "has never explicitly held to apply...in identical circumstances." Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985).

To determine whether a right is "clearly established," the Court looks to the highest court in the state where the case arose, to the United States Court of Appeals, or to the Supreme Court. See Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988); cf. Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994). In addition, to determine whether an official would believe a right was clearly established, the Court utilizes an "objective reasonableness" standard, judging whether a "reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions."

-18-

Lavado v. Keohane, 992 F.2d 601, 606 (6th Cir. 1993) (quoting Poe v. Haydon, 853 F.2d 418, 423 (6th Cir. 1988)); Long v. Norris, 929 F.2d 1111, 1115 (6th Cir. 1991).

Under Hunter, the threshold question of reasonableness of a search and/or seizure is to be resolved by the Court. In Jeffers v. Heavrin, 10 F.3d 380, 381 (6th Cir. 1993), the Court of Appeals considered an immunity contention regarding a Fourth Amendment claim and stated, "[o]ur starting point is that probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness. Reasonableness is a question of law to be decided by the trial judge."

"In determining whether a defendant's Section 1983 action should have been dismissed on summary judgment, a court is to 'evaluate for the minimal showing of credibility any evidence that the defendants did not have probable cause.'" Yancey v. Carroll County, 876 F.2d 1238, 1243 (6th Cir. 1989) (quoting Losch v. Borough of Parkesburg, 736 F.2d 903, 909 (3d Cir. 1984).

The objective reasonableness standard in this case is measured by the Fourth Amendment, because Plaintiff challenged whether the individual Defendants had probable cause to seize her by threatening arrest. The central teaching of the Supreme Court's Fourth Amendment decisions on government searches and seizures of persons and their property is that for such government acts, probable cause is required to seize a citizen or to search his or her person and/or property. See Illinois v. Gates, 462 U.S. 213, 231 (1983); Terry v. Ohio, 392 U.S. 1, 16, (1968).

Probable cause is a practical, non-technical concept that deals with probabilities and takes into account the "considerations of everyday life on which reasonable and prudent men, not legal

-19-

technicians act." Gates, 462 U.S. at 231. As the Sixth Circuit has expressed, the Fourth Amendment "necessitates an inquiry into probabilities, not certainty....[A] court is to take into account the factual considerations of everyday life that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred." United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998) (citations omitted). See also Michigan v. Defillippo, 443 U.S. 31, 37 (1970) (explaining that probable cause exists when the "facts and circumstances within the officer's knowledge...are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.").

A determination of probable cause is made by the totality of the circumstances approach. United States v. Leon, 468 U.S. 897, 904 (1984). This standard also applies to § 1983 actions. See Malley v. Briggs, 475 U.S. 335, 344 (1986) (holding that the objective reasonableness standard applied in Leon defines the qualified immunity accorded an officer in a civil rights action).

Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); Greene v. Reeves, 80 F.3d 1101, 1105 (6th Cir. 1996) (quoting Beck); Centanni v. Eight Unknown Officers, 15 F.3d 587, 592 (6th Cir. 1994) (quoting Beck). Further, a "valid arrest based on then-existing probable cause is not vitiated if the suspect is later found innocent." Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988). The police officer "is under no obligation to give any credence to a suspect's story...if the facts initially discovered

-20-

provide probable cause." Id. at 263. Determinations of probable cause, "even if wrong, are not actionable as long as such determinations pass the test of reasonableness." Jeffers, 10 F.3d at 381. Yet, a police officer is required to consider, under the totality of circumstances approach, both exculpatory and inculpatory evidence before determining if probable cause exists for making the arrest. Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000) (citing Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir. 1999).

The relevant question then is whether the individual Defendants had probable cause to suspect that Plaintiff had committed, was committing, or was about to commit an offense. See Defillippo, 443 U.S. at 37 (1970). According to the facts presented by Defendants, a reasonable person could not have found that Plaintiff was committing or was about to commit a violation of the Tennessee domestic assault statute. Tenn. Code Ann. § 39-13-101. The crime of domestic assault can be committed by (1) intentionally, knowingly or recklessly causing bodily injury to another, (2) by intentionally or knowingly causing another to reasonably fear imminent bodily injury or (3) by intentionally or knowingly causing physical contact with another, in a manner that a reasonable person would regard as extremely offensive or provocative. Tenn. Code Ann. § 39-13-101.

The undisputed facts here reveal that at no time could a reasonable person believe Plaintiff was about to violate this statute in any way. Plaintiff merely requested to remove her daughter from Jeremy Clark's unlocked car. As Plaintiff had a legal right to her daughter, she would not have been causing offensive or provocative contact with another person. She did not physically threaten Jeremy Clark with any violence, nor would she have had to come into physical contact with Jeremy Clark in order to remove her daughter from the car. As such, her

-21-

proposed action, which Plaintiff contends caused her to be threatened with arrest, would not have

been a violation of any law.  As such, the evidence taken in the light most favorable to Plaintiff

reveals that the threatened arrest lacked probable cause, and thus violated the Fourth Amendment

prohibition against unreasonable seizure.

Additionally, the expert testimony of Commander Mays on reasonableness is not

conclusive.  As noted above, the reasonableness of a search and/or seizure is to be resolved by

the Court.  Hunter v. Bryant, 502 U.S. 224 (1991).  Expert testimony will not be considered on

the ultimate questions of law.  Berry v. City of Detroit, 25 F.3d 1342, 1353-54 (6th Cir. 1994);

United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984).  The Sixth Circuit has previously

rejected expert testimony on the reasonableness of certain police practices.  Hubbard v. Gross,

199 Fed.Appx. 433, 442-43 (6th Cir. 2006).

Defendants contend that Plaintiff's proposed retrieval of Autumn could have led to a

physical altercation and Plaintiff would have been the primary physical aggressor.  (Docket Entry

29 p. 4).  They further argue that the individual Defendants were merely accounting for the "what

ifs" that might occur if Plaintiff attempted to retrieve Autumn.  These arguments must fail,

however.  As noted above, probable cause determinations do not turn on the infinite possibilities

of what might happen in any police encounter.  Probable cause is viewed under a reasonable

person standard.  What Plaintiff requested to do did not and could not constitute a crime.  If

Jeremy Clark were standing in front of the car or holding Autumn in his arms, the Court might

find a different result.  In those hypothetical situations, the individual Defendants could have

viewed Plaintiff's request to retrieve Autumn as "intentionally or knowingly causing physical

contact with another, in a manner that a reasonable person would regard as extremely offensive

or provocative." T.C.A. § 39-13-101.

But this Court need not deal in hypotheticals. Under the facts presented by Plaintiff, she merely requested to do something that she had a legal right to do (retrieve her daughter). For this, she was threatened with arrest. As such, the individual Defendants' actions were unreasonable because they lacked probable cause, and therefore Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim against the individual Defendants must be denied. Because a material factual dispute exists as to whether Plaintiff was affirmatively threatened with arrest, however, Plaintiff's motion for summary judgment on her Fourth Amendment claim against the individual Defendants is also denied.

## 2. City of Hendersonville

Plaintiff also alleges a Fourth Amendment violation against the City of Hendersonville and the Hendersonville Police Department. Plaintiff claims in her motion for summary judgment that the custom, practice or policy of the City of Hendersonville facilitated the violation of her Fourth Amendment rights by the individual Defendants. Defendants counter in their own motion for summary judgment that no practice, policy or custom of the City of Hendersonville was the causal link behind any alleged violation.

As an initial matter, Defendants note that the Hendersonville Police Department is a sub-division of the City of Hendersonville and not a separate municipal entity capable of being sued. Plaintiff does not address this argument. The Court agrees with Defendants. Police departments are not separate legal entities which may be sued. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir.1994). As such, all claims against the Hendersonville Police Department are dismissed.

To state a civil rights claim against a local governmental entity, Plaintiff must establish

-23-

that (1) she suffered a deprivation of a constitutionally protected interest; and (2) the deprivation was caused by an official policy, custom[7] or usage of the local governmental entity.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Plaintiff cannot rely on the actions of individual employees in order to impose liability on municipalities, because respondeat superior liability is not contemplated by § 1983.  Id.

As stated by the Supreme Court, "municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986).

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.  Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved.  But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (footnotes omitted).  Municipal liability will also attach only if Plaintiff can demonstrate that the policy or custom is the "moving force of the constitutional violation."  Polk County v. Dodson, 454 U.S. 312, 326 (1981) (citing Monell, 436 U.S. at 694).

In support of her claim that the City of Hendersonville's policy caused the constitutional

---

[7]For purposes of § 1983, a "custom" is a legal institution that is permanent and established, but is not authorized by written law.  Before a custom can be the basis for a civil rights violation, the custom must be so "permanent and well settled as to constitute a 'custom or usage' with the force of law."  Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) (quoting Monell, 436 U.S. at 691).

-24-

violation, Plaintiff states that Defendants have admitted to exercising the policies and procedures of the Hendersonville Police Department as expressed in Hendersonville Police Department General Order 91.1 ("General Order 91.1"). Plaintiff also asserts that the City of Hendersonville has ratified the individual Defendants' actions through a failure to re-train or reprimand the individual Defendants, thus attaching municipal liability.

Plaintiff offers only General Order 91.1 as evidence of an existing municipal policy, along with the individual Defendants' testimony and the City of Hendersonville's assertions that the individual Defendants acted pursuant to policy. However, the actual policy articulated in General Order 91.1 states:

> If a law enforcement officer has probable cause to believe that two (2) or more persons committed a misdemeanor or felony, or if two (2) or more persons make complaints to the officer, the officer shall try to determine who was the primary aggressor. Arrest is the preferred response only with respect to the primary aggressor. The officer shall presume that arrest is not the appropriate response for the person or persons who were not the primary aggressor. If the officer believes that all parties are equally responsible, the officer shall exercise his or her best judgment in determining whether to arrest all, any or none of the parties.

(Docket Entry No. 33). Nothing in this policy supports any contention that it is the City of Hendersonville's policy to violate Plaintiff's Fourth Amendment rights through the erroneous threat of arrest. In fact, the policy itself spells out the need for probable cause before arrest.

Even Plaintiff acknowledges the difficulty of attributing any policy or custom that was the "moving force" behind the individual Defendants' alleged violations. Plaintiff observes that "but for Hendersonville's admission at deposition that the officers acted pursuant to policy, there would not be a cause of action against the City." (Docket Entry No. 22 p. 18). While it is not clear whether the individual Defendants' actions violated the City of Hendersonville's policy (as

-25-

noted above), Plaintiff does not even allege how General Order 91.1 itself violates the Fourth Amendment. Thus, Plaintiff's entire argument for municipal liability must depend on the City of Hendersonville's alleged ratification of the individual Defendants' actions.

Specifically, Plaintiff argues that the City of Hendersonville's refusal "to re-train, reprimand, redirect, or in some way address Officers Garrett and Lara" constitutes its acceptance of the violations of Plaintiff's constitutional rights. Under the Monell framework, however, Plaintiff must offer evidence showing that (1) the training or supervision of the police officers was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference to the rights of persons with whom the police came into contact; and (3) the inadequacy was closely related to or actually caused the injury. Russo v. City of Cincinnati, 953 F.2d 1036, 1046 (6th Cir. 1992). Additionally, "deliberate indifference" can be shown through (1) the failure to train "in light of foreseeable consequences" and (2) failure to remedy inadequate training despite "repeated complaints of constitutional violations by its officers." Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999). Finally, where a municipality properly investigates an alleged constitutional violation but determines rights were not violated, the Sixth Circuit has suggested there is no deliberate indifference even if the municipality's determination was erroneous. King v. City of Eastpointe, 86 Fed.Appx. 790, 804 (6th Cir. 2003).

Plaintiff's claim for municipal liability fails for multiple reasons. First, Plaintiff has not offered any evidence showing that the training of the individual Defendants was inadequate. General Order 91.1 does not violate the Fourth Amendment, and cannot be blamed as the "moving force" for any violation of Plaintiff's Fourth Amendment rights. Plaintiff has not otherwise explained how the individual Defendants have not been given proper instruction and

-26-

training on probable cause and threats to arrest. Even if the Court accepted as true the bare assertion that the individual Defendants did not receive adequate training regarding custody disputes, Plaintiff has not explained or offered evidence that the events in this case were "foreseeable consequences" as required by Shaner. 172 F.3d at 931. Plaintiff also has not offered evidence of "repeated complaints of constitutional violations by its officers" related to Fourth Amendment threats to arrest. Plaintiff has failed to present evidence that any alleged failure to train was causally connected to the alleged violation here.

In short, Plaintiff has not offered any evidence that supports the required legal thresholds for municipal liability under § 1983. As such, Plaintiff's motion for summary judgment on her Fourth Amendment claim against the City of Hendersonville is denied, and Defendants' motion for summary judgment on that claim is granted.

## B. Fourteenth Amendment

### 1. Individual Defendants

Plaintiff also alleges that the individual Defendants violated the Fourteenth Amendment Due Process rights of Plaintiff and Autumn Clark through a "State Created Danger" that increased the risk of harm through unconstitutional police action. Plaintiff claims that by affirmatively placing Autumn Clark in Jeremy Clark's custody, this ultimately led to her death. Defendants argue that the individual Defendants did not violate any rights, and instead found that because there was no evidence of any order of protection, restraining order, or violent act, the parties were left in the status quo from when the individual Defendants first arrived on the scene.

Generally, a police officer who fails to protect a citizen cannot be sued under 42 U.S.C. § 1983. DeShaney v. Winnebago County Dep't Of Social Services, 489 U.S. 189, 202 (1989).

-27-

One exception to this rule is under the "State Created Danger" doctrine,[8] and the Sixth Circuit has specified three elements that plaintiffs must show to meet this exception: (1) affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence; (2) a "special danger" where the state's actions place the victim specifically at risk (as distinguished from a risk that affects the public at large); and (3) the state must have known or clearly should have known that its actions specifically endangered an individual. Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998).

Here, Plaintiff cannot prove the first prong of the State Created Danger test under the facts she has alleged. DeShaney specifically requires an "affirmative act" by the state actors that created or increased the danger, which did not occur here. Accepting the facts as alleged by Plaintiff, the individual Defendants never moved Autumn or affirmatively placed her in any danger. They simply left her in her father's vehicle after learning that Jeremy Clark was not subject to any order of protection and had legal rights with respect to Autumn.

The only affirmative act in the entire police encounter was the individual Defendants' alleged threat to arrest Plaintiff. But under no circumstances could this action constitute a violation of Plaintiff's Fourteenth Amendment Due Process rights. The Sixth Circuit has declined to impose liability in similar circumstances even where the state actors affirmatively moved the victim. Jackson v. Schultz, 429 F.3d 586, 591 (6th Cir. 2005).

Plaintiff's citation to Beck v. Haik, 377 F.3d 624 (6th Cir. 2004) is likewise misplaced. In that case, the Sixth Circuit held that "official action preventing rescue attempts by a volunteer

---

[8]The other exception to this rule is the "Custody Exception," which Plaintiff does not assert and does not apply here. See Carver v. City of Cincinnati, 474 F.3d 283, 286 (6th Cir. 2007).

-28-

civilian diver can be arbitrary in a constitutional sense if a state-sponsored alternative is not available *when it counts*." (emphasis added). 377 F.3d at 643 (citation omitted). Plaintiff would vastly expand the State Created Danger doctrine beyond situations where victims are clearly in need of aid (such as imminently drowning in a lake). Instead, Plaintiff's claim would require applying the exception to situations where some danger might possibly develop in the future, even if none is imminent at the current time.

When the individual Defendants encountered the scene, the undisputed facts show that Autumn Clark was not in any immediate danger. She was properly and safely secured in the back seat of Jeremy Clark's vehicle. Even in the light most favorable to Plaintiff, it cannot be said that Autumn was in need of an imminent private "rescue" within the scope envisioned by Haik. As such, Plaintiff's claim of Fourteenth Amendment violations by the individual Defendants under the State Created Danger doctrine must fail.

Even assuming *arguendo* that a constitutional violation occurred here, the individual Defendants would still be entitled to qualified immunity. As noted above, the test for qualified immunity is (1) whether the right was clearly established and (2) whether the contours of the right are sufficiently clear that a reasonable official would understand that his actions violate that right. Anderson, 483 U.S. at 640. The Sixth Circuit recently ruled that Haik does not provide clear enough precedent to guide police officers so as to create a "clearly established right." Carver v. City of Cincinnati, 474 F.3d 283, 287 (6th Cir. 2007). Given the lack of a clearly established right, it certainly cannot be said that its contours would be clear to reasonable officials. As such, the individual Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claims.

-29-

**2. City of Hendersonville**

For the reasons stated in Section II.A.2 above regarding municipal liability, Plaintiff's Fourteenth Amendment claim here fails because there is no policy or custom that caused a violation of Plaintiff's rights. Plaintiff's Fourteenth Amendment claim also fails because if the individual Defendants themselves created no constitutional injury as to Plaintiff's Fourteenth Amendment rights, the supervisory municipality cannot be liable either. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of [unconstitutional actions] is quite beside the point."). As such, Plaintiff's motion for summary judgment on her Fourteenth Amendment claim is denied, and Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claim is granted.

For the above-stated reasons, the Court concludes that Plaintiff's motion for summary judgment (Docket Entry No. 21) should be denied. The Court also concludes that Defendants' motion for summary judgment (Docket Entry No. 24) should be granted in part and denied in part.

An appropriate order is filed herewith.

**ENTERED** this the ⟨17th⟩ day of September, 2008.

WILLIAM J. HAYNES, JR.
United States District Judge

-30-